**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| VICTORIA THORSEN, <br><br> Plaintiff, <br><br> v. <br><br> BCS DEVELOPERS, LLC, *et al.*, <br><br> Defendants. | Civil Action No. 24-4370 (MAS) (RLS) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

    This matter comes before the Court upon Defendants BCS Developers, LLC ("BCS Developers"), Buff City Soap, and BCS Northern, LLC's ("BCS Northern") (collectively, "Defendants") Motion to Dismiss (ECF No. 14) Plaintiff Victoria Thorsen's ("Plaintiff") Amended Complaint (ECF No. 9). Plaintiff opposed (ECF No. 15), and Defendants replied (ECF No. 16). After careful consideration of the parties' submissions, the Court decides Defendants' motion without oral argument pursuant to Local Civil Rule 78.1(b). For the reasons outlined below, Defendants' Motion to Dismiss is granted in part and denied in part.

## I.     BACKGROUND

### A.     Factual Background[1]

Plaintiff is a female who resides in Pennsylvania. (Am Compl. ¶ 13, ECF No. 9.) On June 14, 2021, Plaintiff began her employment with Defendants[2] as a Regional Manager, at an annual salary of $75,000 per year with up to a $10,000 annual bonus. (*Id.* ¶¶ 22-23.) As part of her duties, Plaintiff was required to travel to various client locations in her region. (*Id.* ¶ 24.) Throughout her employment, Plaintiff performed her job satisfactorily or above satisfactorily. (*Id.* ¶ 25.)

Plaintiff became pregnant during her employment with Defendants, and in early January 2022, she started experiencing pregnancy complications. (*See id.* ¶ 40.) She requested to stop traveling to regional client locations, but her direct supervisor asked Plaintiff to "push through." (*Id.* ¶ 41.) Plaintiff declined to "push through" on the advice of her doctor, and instead, took approved unpaid medical leave for ten weeks during her pregnancy before giving birth on February 4, 2022. (*Id.* ¶¶ 42, 44-45.) While on her unpaid medical leave, Plaintiff participated in two required formal work meetings and answered further work questions without compensation. (*Id.* ¶¶ 46-47.)

Plaintiff returned from her approved unpaid medical leave around April 5, 2022, and, on the advice of her physician, requested to have time and a suitable location to express breast milk ("pump") while at work. (*Id.* ¶¶ 49-50.) In the months after Plaintiff returned, Defendants did not provide her a location to pump, and she therefore had "no choice but to pump in her car." (*Id.* ¶¶ 51-53.) Plaintiff requested to put scheduled pump breaks on her calendar so that her co-workers

---

[1] For the purpose of considering the instant motion, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).

[2] BCS Developers is a franchise of Buff City Soap incorporated in New Jersey. (*Id.* ¶¶ 14-15.) BCS Northern is a for-profit corporation incorporated in Michigan. (*Id.* ¶ 16.)

would not schedule meetings when she needed to pump, but the Director of Operations told her that was not necessary. (*Id.* ¶ 59.) Plaintiff, therefore, was required to pump with her camera off while participating in virtual meetings. (*Id.* ¶¶ 55-58.) Plaintiff had to choose between pumping during meetings or not pumping, and she ended up developing mastitis from limited pumping. (*Id.* ¶¶ 60-61.) She had to use her accrued personal time to attend doctor appointments to treat her mastitis. (*Id.* ¶ 63.) Months later, Plaintiff did not receive her annual bonus and was not timely provided other benefits, such as health, dental, and vision insurance. (*Id.* ¶¶ 64, 67-68.)

In June 2022, Plaintiff attended a meeting with Kelsey Welling ("Welling"), Jared Riggleman ("Riggleman"), and Eris Taylor ("Taylor") to discuss Welling and Riggleman's promotions to District Managers. (*Id.* ¶ 27-28.) During the meeting, Welling raised her concerns and the concerns of employees who reported to her about pay discrepancies to Taylor, the Director of Operations at the time. (*Id.* ¶ 29.) In response, Taylor informed Welling that employees should not discuss their salaries with one another and can be terminated for doing so. (*Id.* ¶ 30.) Plaintiff told Taylor that employees should not be threatened with termination for discussing salaries and that such a threat was unlawful. (*Id.* ¶ 31.)

On October 24, 2022, Plaintiff discussed her concerns about pay disparities between female and male employees with Welling, who was District Manager at the time. (*Id.* ¶¶ 70-71.) Upon learning that Welling earned $60,000 annually, while a male District Manager made $75,000 annually, Plaintiff advised Welling to speak with Defendants' Human Resources Department concerning unequal pay. (*Id.* ¶¶ 72-73, 76.) Defendants terminated Plaintiff on November 8, 2022, for "inappropriate" discussions with her co-worker concerning unequal pay. (*Id.* ¶ 77.)

**B.    Procedural Background**

On or around March 28, 2023, Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 9.) On January 9, 2024, Plaintiff was issued a "Determination and Notice of Rights" letter from the EEOC. (*Id.* ¶ 10.)

Plaintiff commenced this action on March 29, 2024 against Defendants. (ECF No. 1.) Plaintiff filed her Amended Complaint on July 1, 2024, alleging that Defendants violated: (1) the Fair Labor Standards Act ("FLSA") (Counts One and Two); (2) Title VII of the Civil Rights Act of 1964 ("Title VII") (Counts Three through Five); (3) the Providing Maternal Protections for Nursing Mothers Act ("PUMP Act") (Count Six); (4) the New Jersey Law Against Discrimination ("NJLAD") (Counts Seven through Ten); (5) the New Jersey Conscientious Employee Protection Act ("CEPA") (Count Eleven); and (6) New Jersey common law under *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N. J. 1980) ("*Pierce*") (Count Twelve). (*See generally* Am. Compl.)

Defendants moved to dismiss Plaintiff's Amended Complaint. (Defs.' Moving Br., ECF No. 14-2.) Plaintiff opposed (Pl.'s Opp'n Br., ECF No. 15), and Defendants replied (Defs.' Reply Br., ECF No. 16).

## II.    <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 8(a)(2)[3] "requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss under Rule 12(b)(6). *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the court must

---

[3] All references to "Rule" or "Rules" hereafter refer to the Federal Rules of Civil Procedure.

identify "the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must identify all of the plaintiff's well-pleaded factual allegations, accept them as true, and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court can discard bare legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Third, the court must determine whether "the [well-pleaded] facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

## III.    **DISCUSSION**

### A.    **FLSA Reasonable Break Time for Nursing Mothers (Count One) and Failure to Accommodate (Count Nine)**

Defendants argue that Plaintiff's failure to accommodate claims under the FLSA (29 U.S.C. § 207(r)) and NJLAD should be dismissed because: (1) there is no private right of action under 29 U.S.C. § 207(r); (2) Plaintiff did not request an accommodation for a time or location to pump that Defendants denied; and (3) in any event, there is no remedy for Plaintiff under the FLSA. (Defs.' Moving Br. 7-9; Defs.' Reply Br. 3-4.) Plaintiff argues in opposition that she did allege a requested accommodation, which Defendants denied. (Pl.'s Opp'n Br. 4-6.) Plaintiff also argues that she

incurred damages by being forced to take unpaid medical leave[4] and forced to use accrued personal time to attend doctor's appointments after she developed mastitis. (*Id.* at 6.)

### 1.    *Whether There Is a Private Right of Action Under the FLSA*

As an initial matter, the Court must determine whether there is a private right of action under 29 U.S.C. § 207(r). While district courts have disagreed, this Court finds that a private right of action to enforce 29 U.S.C. § 207(r) is created by 29 U.S.C. § 216(b). *See Lampkins v. Mitra QSR, LLC*, No. 16-647, 2018 WL 6188779, at *5 (D. Del. Nov. 28, 2018) (quoting 29 U.S.C. § 216(b) and collecting cases); *Lico v. TD Bank*, No. 14-4729, 2015 WL 3467159, at *3 (E.D.N.Y. June 1, 2015) ("The entitlement to a private right of action [for § 207(r)] could not be more clearly stated in [29 U.S.C. § 216(b)]."); *but see Salz v. Casey's Mktg. Co.*, No. 11-3055, 2012 WL 2952998, at *2–4 (N.D. Iowa July 19, 2012) (finding no private right of action under 29 U.S.C. § 207(r) because it "limits an employee to filing claims directly with the Department [of] Labor").

### 2.    *Whether Plaintiff Made an Accommodation Request that Defendants Denied under the FLSA and the NJLAD*

Under 29 U.S.C. § 207(r)(1)[5] an employer must provide:

> (A) a reasonable break time for an employee to [pump] for her nursing child for [one] year after the child's birth each time such employee has need to [pump]; and

> (B) a place other than a bathroom, that is shielded from view and free from intrusion from coworkers and the public, which may be used by an employee to [pump].

---

[4] Plaintiff alleges that she was forced to take unpaid medical leave while she was still pregnant, but since 29 U.S.C. § 207(r) applies for one year after the child's birth, the Court does not address leave that Plaintiff took before her child's birth. (*See* Pl.'s Opp'n Br. 6); 29 U.S.C. § 207(r)(1)(A).

[5] On December 29, 2022, 29 U.S.C. § 207(r) was repealed. Because it was repealed after Plaintiff's termination, however, the Court still applies § 207(r) here, which was effective March 23, 2010 to December 28, 2022.

Similarly, under the NJLAD, an employer must make a reasonable accommodation where an employee affected by pregnancy, "based on the advice of her physician, requests the accommodation, and, in the case of a[n] employee breast feeding her infant child, the accommodation shall include reasonable break time each day . . . and a suitable room or other location with privacy." N.J. Stat. Ann. § 10:5-12(s). Given the similarities between the requirements of the FLSA and the NJLAD, the Court analyzes them together.

Here, Plaintiff alleges that she, "on the advice of her physician, requested reasonable time, and a suitable location, to [pump]," and Defendants "failed to accommodate Plaintiff in connection with her need to pump." (Am. Compl. ¶¶ 50-51.) Plaintiff further avers that she had "no choice but to pump in her car," had to pump during virtual meetings with her camera off, and when she asked to be permitted to calendar her pump breaks so others would avoid scheduling meetings at those times, the Director of Operations told her that it "wasn't necessary." (*Id.* ¶¶ 52, 54, 56, 59.) Construing these allegations "in the light most favorable to [P]laintiff," as the Court must do, *Fowler*, 578 F.3d at 210, Plaintiff has adequately alleged that she requested an accommodation as defined under the FLSA and the NJLAD for both time and a location to pump, which Defendants denied.

### 3.    *Whether Any Remedy Is Available to Plaintiff Under the FLSA*

Having determined that there is a private right of action under the FLSA, and Plaintiff has adequately pled that Defendants refused her request for a location and time to pump, the Court must next determine whether Plaintiff has any remedy under the FLSA.[6] The United States Court of Appeals for the Third Circuit has not explicitly addressed the issue of what constitutes a

---

[6] Defendants make no argument that Plaintiff does not have a remedy under the NJLAD. (*See generally* Defs.' Moving Br.)

compensable injury under § 207(r), and district courts have disagreed on the scope of the recovery for violations.

Under the penalties provisions applicable to § 207(r):

> "[I]n most instances, an employee may only bring an action for unpaid minimum wages or unpaid overtime compensation and an additional equal amount in liquidated damages. Because employers are not required to compensate employees" for pumping breaks, there will "in most circumstances" be no "unpaid minimum wage or overtime compensation associated with" a failure to do so.

*Weaver v. GAT Airline Ground Support, Inc.*, No. 23-869, 2024 WL 757030, at *4 (W.D. Pa. Feb. 20, 2024) (citing *Reasonable Break Time for Nursing Mothers ("DOL Nursing Mothers Notice")*, 75 Fed. Reg. 80073, 80078 (Dec. 21, 2010)). Some courts have interpreted the penalties provision strictly, finding that only unpaid minimum wages or overtime compensation is available, and using accrued personal time to pump is not a remedy available under 29 U.S.C. § 207(r). *See, e.g.*, *Allison v. City of Farmington*, No. 18-401, 2019 WL 2436266, at *4 (D.N.M. June 11, 2019) ("conclud[ing] that use of compensatory or paid leave time does not fit within the narrow definition of 'unpaid wages' that are compensable under § 207(r)"). Other courts have read the statute more broadly, noting that "hours of leave have been held to be financial assets." *See, e.g.*, *Newsome v. City of Phila.*, 500 F. Supp. 3d 336, 341 (E.D. Pa. 2020) (citing *Clark v. City of Tucson*, No. 14-2543, 2018 WL 1942771, at *1 (D. Ariz. Apr. 25, 2018)).

Here, Plaintiff alleges that she "was forced to choose between pumping during meetings or not pumping," and "[t]his caused [her] milk supply to dwindle, [and] she developed mastitis." (Am. Compl. ¶¶ 60-61.) "As a result of the mastitis that Plaintiff developed, she was forced to take time off to attend appointments with her physician." (*Id.* ¶ 62.) The Amended Complaint, therefore, does not expressly allege that Plaintiff incurred damages in the form of unpaid wages. Rather, Plaintiff alleges that she incurred damages by being forced to choose whether to pump or to work,

and when she chose to work rather than pump, she developed mastitis and had to use her accrued personal time to attend doctor's appointments to treat that mastitis.[7] (*See id.* ¶¶ 60-62.) These allegations lead to a reasonable inference and plausible allegation that Defendants' refusal to provide a reasonable break time for Plaintiff to pump led to her mastitis. In fact, the Department of Labor expressly considers that "[t]he inability to [pump] may also lead to an infection." *DOL Nursing Mothers Notice* at 80075. Notably, "it is not the Court's role, in deciding a motion to dismiss, to make specific rulings with respect to the scope of damages available to the plaintiff. It is sufficient, for present purposes, that plaintiff has plausibly alleged a legally cognizable injury under § 207(r)." *Lico*, 2015 WL 3467159, at *4.

The Court, therefore, denies Defendants' Motion to Dismiss Counts One and Nine.

### B. PUMP Act Claim (Count Six)

Plaintiff alleges that Defendants violated her rights under the PUMP Act because they did not provide a private and secure location for her to pump. (Am. Compl. ¶ 159.) Defendants argue that the PUMP Act claim should be dismissed because Congress passed the PUMP Act after Plaintiff was terminated, and it does not have retroactive application. (Defs.' Moving Br. 6-7; Defs.' Reply Br. 3.) Plaintiff opposes and argues that the PUMP Act is silent on retroactive application, and therefore does not explicitly forbid such application. (Pl.'s Opp'n Br. 3-4.)

The PUMP ACT was passed on December 29, 2022, fifty-one days after Plaintiff was terminated. (Am. Compl. ¶ 77); *see* Pub. L. No. 117-328, 102(a)(1), 136 Stat. 6093, 6091 (2022). The Court, therefore, must first determine whether the PUMP Act applies retroactively. As an initial matter, the PUMP Act contains no express language that Congress intended for it to apply

---

[7] Webster's dictionary defines mastitis as "inflammation of the breast or udder usually caused by infection." "*Mastitis*" MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/mastitis (last visited Mar. 27, 2025).

retroactively. *See* Pub. L. No. 117-328. In general, the "presumption against retroactive legislation is deeply rooted in our jurisprudence." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994). To determine retroactivity without express language within the statute, the Court must determine "whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* at 270. Here, to apply the PUMP Act retroactively would "increas[e] [Defendants'] potential liability for failure to provide the statutorily required accommodations" because Defendants are already potentially liable for the same conduct under 29 U.S.C. § 207(r), as explained above. *Weaver*, 2024 WL 757030, at *8. As such, the Court finds that the PUMP Act does not have retroactive application and therefore dismisses Count Six.

C.    **Retaliation Claims (Counts Two, Five, Eight, and Ten)**

1.    *Retaliation Based on Pregnancy: FLSA (Count Two) and NJLAD (Count Ten)*

Plaintiff raises retaliation claims against Defendants under the FLSA and the NJLAD for taking "materially adverse employment actions" against her for asserting her rights to request an accommodation to pump. (Am. Compl. ¶¶ 98-107; 191-96.) Defendants argue that Counts Two and Ten should be dismissed because Plaintiff did not file a complaint or institute any proceeding against Defendants before her termination, and therefore Plaintiff cannot establish that she engaged in "protected activity." (Defs.' Moving Br. 15-16.) Plaintiff argues in opposition that she communicated oral complaints, which are sufficient. (Pl.'s Opp'n Br. 15-16.)

"To establish a prima facie case of retaliation under the FLSA, a plaintiff must show: (1) participation in an activity protected by the FLSA; (2) an adverse employment action taken by the employer; and (3) a causal connection between the protected activity and the employer's adverse action." *Alberto v. City of Newark, New Jersey*, No. 24-648, 2024 WL 4533329, at *2 (D.N.J. Oct. 21, 2024) (citing *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007)). The

FLSA prohibits an employer from discharging or otherwise discriminating "against any employee because such employee has filed any complaint or instituted . . . any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Given the remedial purpose of the FLSA, the Third Circuit "has broadly interpreted protected conduct under Section [§ 215(a)(3)]." *Uronis v. Cabot Oil & Gas Corp.*, 49 F.4th 263, 269 (3d Cir. 2022). As such, an employee is not required to formally file a complaint. *See id.* Courts have found an oral complaint, *see id.* (citing *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 17 (2011)), and an unofficial internal complaint, *Buchspies v. Pfizer, Inc.*, No. 18-16083, 2019 WL 5078853, at *5 (D.N.J. Oct. 10, 2019), sufficient to satisfy this requirement. But any complaint is not deemed "filed" until "a reasonable, objective person would have understood the employee to have put the employer on notice that [the] employee is asserting statutory rights under the [Act]." *Kasten*, 563 U.S. at 14.

Similarly, to adequately plead a retaliation claim under the NJLAD, the plaintiff must show that: "(1) she engaged in a protected activity known to the defendant; (2) she was thereafter subjected to an adverse employment decision by the defendant; and (3) there was a causal link between the two." *Cohen v. BH Media Grp., Inc.*, 419 F. Supp. 3d 831, 861 (D.N.J. 2019) (citing *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)). An individual is "engaged in protected activity" when she "opposes any practice rendered unlawful under the [NJ]LAD." *Id.* (citation omitted).

Here, even assuming that Plaintiff participated in a protected activity under the the FLSA, the Court finds that she has not alleged a causal link between her protected activity and her termination. Plaintiff alleges that "Defendants violated the FLSA's anti-relation provision when it took materially adverse employment actions against Plaintiff for asserting her rights under the Break Time for Nursing Mothers law" (Am Compl. ¶ 100), and that "there was a causal connection

between Defendants' retaliation and Plaintiff's protected activity sufficient to show that her requests for accommodations to pump played a role and made an actual difference in the Defendants' decisions to terminate her" (*id.* ¶ 195). But Plaintiff does not provide any facts to support such a causal connection. In fact, Plaintiff alleges that she was "informed that her termination was due to her 'inappropriate' discussions with her colleague regarding unequal pay" (*id.* ¶ 77), not her request for an accommodation for a time and location to pump. The Court, therefore, discards Plaintiff's factually unsupported assertions concerning a causal connection. *See Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). The Court, accordingly, grants Defendants' Motion to Dismiss Counts Two and Ten.

**2.      *Retaliation Based on Pay Disparities: Title VII (Count Five) and NJLAD (Count Eight)***

Plaintiff alleges that Defendants violated Title VII and the NJLAD by terminating her in retaliation for engaging in a protected activity when she reported concerns of pay disparity between female and male employees. (Am. Compl. ¶¶ 143-55; 174-83.) Defendants argue that Plaintiff failed to allege a prima facie claim because she did not engage in a "protected activity." (Defs.' Moving Br. 13-14.) Plaintiff argues in opposition that she engaged in a "protected activity" by opposing and encouraging Welling to oppose the perceived discriminatory pay. (Pl.'s Opp'n Br. 14-15.)

"Claims raised under the NJLAD are analyzed under the same framework applicable to Title VII cases." *Waiters v. Aviles*, 418 F. App'x 68, 72 (3d Cir. 2011). The Court, therefore, addresses Counts Five and Eight together. To sufficiently state a claim of retaliation under Title VII, Plaintiff must adequately allege that: "(1) [she] engaged in a protected activity; (2) [Defendants] took adverse action against her; and (3) a causal link exists between the protected activity and the adverse action." *Anderson v. Boeing Co.*, 694 F. App'x 84, 88 (3d Cir. 2017) (citing

*Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006)). The parties dispute whether Plaintiff adequately pled the first element—that she engaged in a "protected activity." Such protected activity "includes opposition to unlawful discrimination under Title VII." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) (citing *Moore*, 461 F.3d at 340). Under the NJLAD, such protected activity also includes "aid[ing] or encourag[ing] any other person in the exercise or enjoyment of, any right granted or protected by [the NJLAD]." N.J. Stat. Ann. § 10:5-12(d). "'Opposition' to discrimination can take the form of 'informal protests of discriminatory employment practices, including making complaints to management.'" *Moore*, 461 F.3d at 343 (quoting *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 135 (3d Cir. 2006)). Plaintiff, as an employee, however, "must have an 'objectively reasonable' belief that the activity [she] opposes constitutes unlawful discrimination under Title VII." (*Wilkerson*, 522 F.3d at 322 (citing *Moore*, 461 F.3d at 340)).

Here, Plaintiff alleges that during a meeting in June 2022, during which Plaintiff was present, Welling brought concerns to Taylor about "pay discrepancies." (Am. Compl. ¶ 29.) After Taylor informed Welling that employees should not discuss their salaries, and they can be terminated for such discussions, Plaintiff "interjected and informed [Taylor] that employees should not be threatened with termination for discussing their salaries and that such a threat was unlawful." (*Id.* ¶¶ 30-31.) About four months later, after Welling had the new position of District Manager, Plaintiff reported her concerns about "disparities in pay between female versus male employees" and advised Welling to speak with Human Resources about these disparities. (*Id.* ¶¶ 70-76.) Plaintiff finally alleges that just two weeks later, she was terminated "due to her 'inappropriate' discussions with her colleague regarding unequal pay." (*Id.* ¶ 77.)

The Court finds that Plaintiff has adequately alleged that she engaged in "protected activity" through the comment she made directly to Taylor and her encouragement of Welling to bring her concerns about pay discrepancies due to gender to Human Resources. (*See id.* ¶¶ 31, 77.) Importantly, on a motion to dismiss, "the [C]ourt is not free to question whether there w[ere] in fact" gender pay disparities. *See Wilkerson*, 522 F.3d at 322. The Court is "not prepared to hold at this preliminary stage that it is implausible that [Plaintiff] ha[d] a good faith belief that" Defendants did in fact commit an unlawful practice by telling employees that they could not discuss salaries or gender pay discrepancies under Title VII or the NJLAD. *Id.* The Court, accordingly, denies Defendants' Motion to Dismiss Counts Five and Eight.

### D. Sex Discrimination: Title VII (Count Three) and NJLAD (Count Seven)

Discrimination claims brought under Title VII and NJLAD are "controlled by the three-step burden-shifting framework set forth in *McDonell Douglas*." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 841 (3d Cir. 2016) (citing, among others, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973)). Under the *McDonnell Douglas* framework, a plaintiff first must make a prima facie case of discrimination; the burden then shifts to the defendant, who must articulate a "legitimate," "nondiscriminatory reasons for its actions"; and finally, the burden shifts back to the plaintiff to prove that the employer's "nondiscriminatory explanation is merely a pretext for the discrimination or retaliation." *Id.* at 842.

Under this theory of discrimination, a plaintiff must adequately plead that she was subject to purposeful discrimination. *Weldon v. Kraft, Inc.*, 896 F.2d 793, 796 (3d Cir. 1990); *see Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006). Specifically, to assert a prima facie case of discrimination, a plaintiff must allege that (1) she is a member of a protected class; (2) she is qualified for the position; (3) she was subject to an adverse employment action;

and (4) "the adverse action was taken under circumstances giving rise to an inference of discrimination." *Ewell v. NBA Props., Inc.*, 94 F. Supp. 3d 612, 620 (D.N.J. 2015) ) (citing *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014)). An adverse employment action is something "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment"—in other words, "material." *Tourtellotte*, 636 F. App'x at 842 (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)).

Here, Plaintiff alleges that Defendants discriminated against her on the basis of her "sex, pregnancy, and childbirth[-]related medical condition of lactation." (Am. Compl. ¶ 115.) Defendants argue that Plaintiff's claim should be dismissed because she was not pregnant or "suffering the effects of a pregnancy" when she was terminated, as required under the first prong. (Defs.' Moving Br. 9.) Defendants further argue that Plaintiff's pregnancy discrimination claim should be dismissed because she was terminated more than nine months after giving birth and was not pumping when terminated. (Defs.' Reply Br. 7.)Plaintiff argues in opposition that she was "suffering the effects of a pregnancy" when Defendants terminated her because she needed to pump after returning to work and later developed mastitis. (Pl.'s Opp'n Br. 6, 9-10.)

The parties solely dispute whether Plaintiff adequately pled the first and fourth prongs of a Title VII claim based on sex discrimination. (*See* Defs.' Moving Br. 9-11; Pl.'s Opp'n Br. 7-8.)[8] The Court finds that, even assuming Plaintiff was a member of a protected class under the first prong, she did not adequately plead an inference of discrimination under the fourth prong.

Plaintiff alleges that "[her] protected characteristics (sex, pregnancy, and lactation) played a determinative factor in Defendants' decisions." (Am. Compl. ¶ 117.) Plaintiff, however, provides

---

[8] Defendants do not dispute that Plaintiff was qualified for her job or that she suffered an adverse employment decision. (Defs.' Moving Br. 9-11.)

no allegations or factual support as to how her protected characteristics played such a determinative factor. Such a "naked assertion[] devoid of further factual enhancement" is insufficient to state a claim. *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789-90 (3d Cir. 2016) (affirming dismissal of sex discrimination claim where allegations were conclusory). Plaintiff simply does not allege facts connecting her request for an accommodation to pump with her termination. The Court, accordingly, dismisses Counts Three and Seven.

### E.    Hostile Work Environment: Title VII (Count Four)

Plaintiff alleges that Defendants created a hostile work environment under Title VII through harassing conduct based on Plaintiff's sex and pregnancy. (Am. Compl. ¶¶ 129-30, 133.) Defendants argue that this claim should be dismissed because Plaintiff does not allege specific facts concerning what hostility she was allegedly subjected to or by whom. (Defs.' Moving Br. 12.) Defendants further argue that the facts underlying Plaintiff's hostile work environment claim are identical to those underlying her failure to accommodate claim and therefore must be dismissed. (Defs.' Reply Br. 7-8.) Plaintiff argues in opposition that she did allege specific facts in her Amended Complaint sufficient to plead her claim. (Pl.'s Opp'n Br. 11-13.)

A hostile work environment claim "requires proof of pervasive or severe intentional discrimination that affected the plaintiff and would also affect a reasonable person." *Bouton v. BMW of N. Am., Inc.*, 29 F.3d 103, 106 (3d Cir. 1994); *see also Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017). "Whether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.'" *Castleberry*, 863 F.3d at 264 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

Here, Plaintiff alleges that "Defendants' conduct . . . was severe or pervasive enough to make a reasonable nursing mother believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive." (Am. Compl. ¶ 129.) Plaintiff does not, however, allege specific discriminatory conduct or who undertook any such alleged discriminatory conduct. (*See generally id.*) Instead, she includes only "bare assertions" that "amount to nothing more than a 'formulaic recitation of the elements'" of a hostile work environment claim. *Ashcroft*, 556 U.S. at 681; *see Waiters*, 418 F. App'x at 71 (affirming dismissal of hostile work environment claim where plaintiff "failed to allege any facts or circumstances—beyond her bare assertions—that the defendants' conduct was motivated by discriminatory animus"). The Court, accordingly, grants Defendants' Motion to Dismiss Count Four.

### F.    CEPA Claim (Count Eleven)

Defendants argue that Plaintiff's CEPA claim is barred by the one-year statute of limitations, which expired on November 8, 2023. (Defs.' Moving Br. 16-18.) Plaintiff argues in opposition that equitable tolling should apply because Plaintiff was prevented "in an extraordinary way" from asserting her CEPA claim. (Pl.'s Opp'n Br. 18.) Specifically, Plaintiff argues that she could not bring her Title VII claims before receiving a "Notice of Right to Sue" letter from the EEOC, and despite filing her EEOC Charge of Discrimination on March 28, 2023, she did not receive that letter until January 9, 2024. (Pl.'s Opp'n Br. 17-19.) Plaintiff argues, therefore, that she was forced to choose between filing a timely CEPA claim or else risk her Title VII claims being potentially dismissed under the doctrine of collateral estoppel. (*Id.* at 19.) Defendants argue in

reply that Plaintiff was, *inter alia*, not precluded from filing a CEPA cause of action and later amending her complaint. (Defs.' Reply Br. 13.)

CEPA is remedial legislation that New Jersey Courts have held was enacted "to protect employees from retaliatory actions by employers" and should be construed liberally. *Blackburn v. U.S. Parcel Serv., Inc.*, 179 F.3d 81, 91 (3d Cir. 1999) (quoting *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994)). Under CEPA, the moving party must bring her claim within the one-year statute of limitations. *See* N.J. Stat. Ann. 34:19-5. In general, "[a] statute of limitations defense is an affirmative defense that a defendant must usually plead in his [or her] answer." *Stephens v. Clash*, 796 F.3d 281, 288 (3d Cir. 2015) (citing *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014)). A statute of limitations defense, however, can also be raised via a Rule 12(b)(6) motion "if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Id.* (quoting *Schmidt*, 770 F.3d at 249). The Court may only grant such a motion "if the face of the complaint demonstrates that [Plaintiff's] claims are untimely." *Id.* (quotations and citations omitted).

Here, it is clear from the face of the Complaint, and the parties do not dispute, that the one-year statute of limitations had expired when Plaintiff brought her claim because she filed her complaint on March 29, 2024, and the statute of limitations ran on November 8, 2023, one year after the date of her termination. (Defs.' Moving Br. 16-18; Pl.'s Opp'n Br. 18-19); *Jones v. Jersey City Med. Ctr.*, 20 F. Supp. 2d 770, 772 (D.N.J. 1998) ("For statute of limitations purposes, an employee's cause of action under CEPA accrues on the date of the discharge, and such action must be filed within one year of the discharge date." (citing *Keelan v. Bell Commc'ns Rsch.*, 674 A.2d 603, 606 (N.J. Super. Ct. App. Div. 1996))). As an initial matter, therefore, the Court must determine whether equitable tolling applies to prevent the one-year statute of limitations from

running on Plaintiff's CEPA claim. *See Culp v. Comm'r of Internal Revenue*, 75 F.4th 196, 203 (3d Cir. 2023) ("The equitable tolling doctrine pauses the running of, or tolls, a statute of limitations when a litigant has pursued h[er] rights diligently[,] but some extraordinary circumstance prevents h[er] from bringing a timely action.") (internal quotations omitted) (quoting *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014)).

Plaintiff requests that this Court toll the statute of limitations because of a prerequisite she was required to fulfill before filing a Title VII claim, *not* a prerequisite she was required to fulfill before filing a CEPA claim. (Pl.'s Opp'n Br. 19 ("Plaintiff could not bring suit for her Title VII claims without having first received a right-to-sue letter.").) Plaintiff, therefore, was limited in no way from bringing her CEPA claim within the statute of limitations.[9] The Court, accordingly, grants Defendants' Motion to Dismiss Count Eleven.

### G.    *Pierce* **Claim (Count Twelve)**

Plaintiff alleges that Defendants violated the *Pierce* doctrine because Defendants wrongfully terminated Plaintiff in violation of public policy. (Am. Compl. ¶ 210.) Defendants argue that Plaintiff's *Pierce* claim should be dismissed because Plaintiff has already alleged the same facts and policy statements within her Title VII, NJLAD, and FLSA claims. (Defs.' Moving Br. 20-21.) Plaintiff opposes and argues that Defendants violated public policy derived from the Equal Pay Act, which Plaintiff did not assert as a claim. (Pl.'s Opp'n Br. 21-22.)

Plaintiff has asserted a claim under the NJLAD (Count Eight), which rests upon the same alleged facts and public policy as the *Pierce* claim. (*See* Am. Compl ¶¶ 174-83; 205-10.) "The exclusivity of . . . NJLAD remedies . . . preempts any common law claims based on the same

---

[9] As Defendants note, Plaintiff could have brought her CEPA claim and later amended her complaint to add her Title VII claims. She was not barred from bringing her CEPA claim.

factual predicate." *Campbell v. Sedwick, Detert, Moran, & Arnold*, No. 11-642, 2011 WL 5248150, at *2 (D.N.J. Nov. 2, 2011) (collecting cases) (dismissing *Pierce* claim where plaintiff also brought NJLAD claim); *see also Bell v. KA Indus. Servs.*, 567 F. Supp. 2d 701, 709 (D.N.J. 2008) (finding that plaintiff's *Pierce* claim failed as a matter of law because it was "premised on the public policy embodied by [NJ]LAD"). The Court, accordingly, dismisses Count Twelve.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is granted in part and denied in part. The Court will issue an Order consistent with this Memorandum Opinion.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

20